# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA MUSE,<br><br>   Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>   Defendant. | Case No. ED CV 10-0111 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.
## INTRODUCTION AND SUMMARY

On February 3, 2010, plaintiff Cynthia Muse ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). [Docket No. 3.]

On May 10, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 15, 16.]

In sum, having carefully studied, *inter alia*, the parties' written submissions and the administrative record, the Court concludes that, as detailed below, there is

substantial evidence in the record, taken as a whole, to support the decision of the Administrative Law Judge ("ALJ"). Thus, the Court affirms the Commissioner's decision denying benefits.

## II.
## PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 28 years old on the date of her administrative hearing, has completed high school and one year of college. (*See* Administrative Record ("AR") at 14, 42, 126, 167.)

On July 23, 2008, Plaintiff filed for DIB and SSI, alleging that she has been disabled since June 16, 2008[1] due to multiple sclerosis, degenerative disc disease and optic neuritis. (*See* AR at 60, 65, 126-30, 131-34.)

On May 15, 2009, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. (*See* AR at 14-45.) The ALJ also heard testimony from Samuel Landoff, a medical expert ("ME"), and Corrine Porter, a vocational expert ("VE"). (*Id.*)

On September 15, 2009, the ALJ denied Plaintiff's request for benefits. (AR at 7-13.) Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of June 1, 2006. (*Id.* at 9.)

At step two, the ALJ found that Plaintiff suffers from severe impairments consisting of "multiple sclerosis, relapsing-remitting type, degenerative disc and joint disease of the thoracolumbar spine with moderate level II obesity." (AR at 9 (emphasis omitted).)

At step three, the ALJ determined that the evidence did not demonstrate that Plaintiff's impairment, either individually or in combination, met or medically

---

[1] At the administrative hearing, Plaintiff moved to amend her alleged onset date to June 1, 2006. (AR at 22.) The ALJ granted Plaintiff's request. (*Id.*)

2

equaled the severity of any listing set forth in the Social Security regulations.[2/] (AR at 10.)

The ALJ then assessed Plaintiff's residual functional capacity[3/] ("RFC") and determined that she can perform light work. (AR at 10.) Specifically, the ALJ found that Plaintiff can "stand or walk only two hours in an eight-hour workday, sit eight-hours in an eight-hour workday with customary breaks, only occasional climbing, balancing, stooping, crouching, kneeling, and crawling, no climbing of ladders or scaffolds or similar hazards, and work only in air-conditioned environments." (*Id.* (emphasis omitted).)

The ALJ found, at step four, that Plaintiff lacks the ability to perform her past relevant work. (AR at 12.)

At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as sewing machine operator, small items assembly worker, and charge account clerk. (AR at 12-13 (emphasis omitted).) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 7, 13.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 1-3, 125.) The ALJ's decision stands as the final decision of the Commissioner.

---

[2/] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[3/] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

## III.
## **STANDARD OF REVIEW**

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

/
/
/
/

# IV.
# ISSUES PRESENTED

Four disputed issues are presented for decision here:

1. whether the ALJ improperly evaluated Plaintiff's treating physician's opinion regarding the side effects of prescribed medication, (*see* Pl.'s Br. at 2-4; Reply at 1-2);

2. whether the ALJ failed to fully and fairly develop the record, (*see* Pl.'s Br. at 7-9; Reply at 3-4);

3. whether the ALJ failed to properly assess Plaintiff's RFC by excluding limitations resulting from the side effects of prescribed medication, (Pl.'s Br. at 4-5; Reply at 2-3); and

4. whether the ALJ erred in posing an incomplete hypothetical question to the VE. (Pl.'s Br. at 5-7; Reply at 3.)

The first two issues are related, as are the last two issues. Accordingly, Court addresses them collectively.

# V.
# DISCUSSION AND ANALYSIS

A. Evaluation of the Medical Evidence

Plaintiff makes two interconnected arguments. First, she contends that the ALJ failed to consider the opinion of treating physician Indermohan S. Luthra, M.D. ("Dr. Luthra") regarding side effects experienced by Plaintiff from prednisone and meclizine medications.[4/] (Pl.'s Br. at 2-4.) Plaintiff maintains that her medications

---

[4/] Prednisone is a corticosteroid and "prevents the release of substances in the body that cause inflammation." *See* www.drugs.com. Meclizine is an antihistamine and anticholinergic and "works by blocking a chemical messenger in the brain, which helps reduce or prevent vomiting." *Id.*

cause akathisia[5] and "excessive sleepiness." (*Id.* at 2.)

Second, Plaintiff maintains that the ALJ improperly disregarded "Dr. Luthra's opinion that Plaintiff is not able to work" and should have recontacted Dr. Luthra "to obtain clarification regarding the doctor's opinion." (Pl.'s Br. at 7.)

      1.    <u>The ALJ Must Provide Specific and Legitimate Reasons Supported by Substantial Evidence to Reject a Treating Physician's Opinion</u>

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995, *as amended* April 9, 1996); *see also* 20 C.F.R. §§ 404.1527(d) & 416.927(d) (prescribing the respective weight to be given the opinion of treating sources and examining sources). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830; *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830; *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2) & 416.927(d)(1)-(2). If the opinion of an examining physician is rejected in favor of the opinion of a nonexamining physician, the ALJ

---

[5] Akathisia is a "syndrome characterized by an inability to remain seated, with motor restlessness and a feeling of muscular quivering; [and] may appear as a side effect of antipsychotic and neuroleptic medication." *Stedman's Medical Dictionary* 42 (28th ed. 2006).

6

may do so only by providing specific and legitimate reasons. *Lester*, 81 F.3d at 830-31. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

### 2. The ALJ Properly Evaluated Dr. Luthra's Opinion and No Further "Clarification" Was Warranted

The Court is persuaded that the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Luthra's opinion. Three reasons guide this determination.

First, the ALJ properly rejected Dr. Luthra's opinion because it was not supported by the objective evidence or Dr. Luthra's own treatment records. This is a specific and legitimate reason supported by substantial evidence. *See Burkhart v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ properly rejected treating physicians' opinion which was unsupported by medical findings, personal observations or test reports).

The ALJ repeatedly asked Plaintiff at the hearing to describe symptoms she was experiencing due to her multiple sclerosis. (*See* AR at 29-33, 39-41.) However, at no point in the hearing did Plaintiff mention negative side effects such as restlessness or sleepiness caused by prednisone and meclizine, even when she testified that she took prednisone for her vision and meclizine for dizziness. (*See generally id.* at 16-45; *see id.* at 32, 34.) Indeed, the only reasons Plaintiff gave for not being able to perform any work were her "lower back," "dizziness and . . . headaches." (*Id.* at 40); *Rubio v. Astrue*, 2009 WL 4907752, at *5 (C.D. Cal. 2009).

Further, Dr. Luthra's notations regarding medication side effects were inconclusive at best. (*See, e.g.,* AR at 362 (treatment note dated July 14, 2008 indicating Plaintiff's "symptomatology of arm and leg weakness that she is experiencing and lack of energy (?) whether it is related to prednisone like

1    electrolyte imbalance, induced by the prednisone or patient has underlying infection
2    like [urinary tract infection]," "has symptoms suggestive of akathisia (?) related to
3    prednisone" and "has excessive sleepiness which could be effect of meclizine"), 518
4    (treatment note dated May 22, 2008 stating that Dr. Luthra "proposed that patient
5    should have urinalysis to rule out any urinary tract infection").)

6    While Dr. Luthra repeatedly made computerized notations regarding Plaintiff's medication side effects that were identical, (*see* AR at 362, 506, 508, 510, 512), the Court finds that these notations do not reflect a longitudinal opinion that Plaintiff suffered from such side effects.  For instance, Dr. Luthra also noted on July 20, 2007, August 31, 2007, and October 24, 2007 that Plaintiff is "32 weeks pregnant and expected date of delivery is July 15."  (*Id.* at 364, 365, 369.)  Apart from these identical notations, Plaintiff cites to no other evidence that she complained of such medication side effects.  (*See generally* Pl.'s Br. at 2-4; Reply at 1-2.)

15   Plaintiff argues that the "ALJ failed to give *any* consideration to the medication side effects identified by Dr. Luthra."  (Pl.'s Br. at 3 (emphasis added).)  However, as explained above, the notations regarding medication side effects were not significant probative evidence and "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence."  *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation marks and citation omitted); *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ need not discuss all evidence but must explain why "significant probative evidence has been rejected") (internal citation and quotation marks omitted).

24   Second, the ALJ properly rejected the checklist form completed by Dr. Luthra wherein he opined that Plaintiff is "[un]able to work" because it was unsupported and failed to "indicate what type of work is being considered."  (*See* AR at 11, 500.)  Dr. Luthra's opinion is comprised of a non-detailed conclusion in a form completed for the purpose of authorizing a release of information submitted to a county welfare

8

1 department. (*See id.* at 500.) In responding to the question, "[i]s this person able to
2 work[,]" Dr. Luthra checked the box indicating "no." (*Id.*)

3 However, the form included no explanation, description of the severity of
4 Plaintiff's symptoms, or medical findings, and as explained below, conflicts with
5 evidence that Plaintiff maintains a daily routine of household chores and significant
6 childcare responsibilities. *See Vasquez v. Astrue*, 346 Fed.Appx. 188, 190 (9th Cir.
7 2009) (ALJ properly rejected treating rheumatologist's checklist form opinion that
8 plaintiff was unable to work because opinion contained no explanation and
9 conflicted with plaintiff's reported daily activities); *Burkhart*, 856 F.2d at 1339-40
10 (no description of medical findings, personal observations or test reports supporting
11 treating physician's opinion that plaintiff was disabled).

12 Moreover, contrary to Plaintiff's assertion, the ALJ was under no duty to
13 recontact Dr. Luthra to "obtain clarification" of his opinion. (Pl.'s Br. at 7.) This
14 duty is triggered only "when there is ambiguous evidence or when the record is
15 inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at
16 459-60. Here, the record before the ALJ was neither ambiguous nor inadequate to
17 allow for a proper evaluation of the medical evidence.

18 Third, the ALJ rejected Dr. Luthra's opinion because it was inconsistent with
19 Plaintiff's own statements regarding her daily activities, a finding that Plaintiff does
20 not challenge here. (AR at 11-12; *see generally* Pl.'s Br. at 1-10; Reply at 1-4);
21 *Vasquez*, 346 Fed.Appx. at 190. In her Adult Function Report, Plaintiff stated that
22 her daily activities include caring for her five children, all under 10 years of age, her
23 husband, and household pets. (*See* AR at 11, 191-92.) In fact, in response to the
24 question "what do you do for [your husband and five children,]" Plaintiff wrote,
25 "everything!" (*Id.* at 192.) Plaintiff also described that her daily activities include
26 feeding and dressing her children, getting them ready for school, caring for her baby,
27 helping her children with homework, fixing dinner and putting her kids to bed. (*Id.*
28 at 191.) She also admits that she is able to shop, wash dishes, do laundry, and some

1  cleaning. (*Id.* at 193, 194.)

2       B.    <u>No Error Occurred with Respect to the RFC Determination and the Vocational Expert Hypothetical</u>

Plaintiff lastly contends that "in assessing and determining Plaintiff's [RFC], the ALJ failed to consider Dr. Luthra's opinion and omitted the doctor's findings from the RFC without providing an explanation." (Pl.'s Br. at 4.) Similarly, Plaintiff also argues that in the hypothetical questions posed to the VE, "the ALJ failed to mention Dr. Luthra's findings that Plaintiff exhibited 'symptoms suggestive of akathisia' and that she experienced 'excessive sleepiness[.]'" (*Id.* at 6.)

Here, the ALJ did not err in omitting any functional limitations caused by akathisia or sleepiness because the ALJ properly discounted Dr. Luthra's opinion. *See Magallanes*, 881 F.2d at 756-57. In other words, because the Court finds that there is substantial evidence in the record as a whole to support the ALJ's decision to reject the limitations resulting from the side effects of Plaintiff's medications, substantial evidence also supports the ALJ's decision to exclude these limitations in his RFC assessment and in the hypotheticals posed to the VE. *Elletson v. Astrue*, 319 Fed.Appx. 621, 622-23 (9th Cir. 2009) (RFC determination and hypothetical posed to VE were proper because the ALJ's determination that plaintiff "has an unlimited capacity to reach" was supported by substantial evidence).

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

Dated: March 17, 2011             _____
                                              Hon. Jay C. Gandhi
                                        United States Magistrate Judge